**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| In re: the Application of Øystein Wærnes Høie for the Return of the Minor Child, A.L.H., to Norway:<br><br>ØYSTEIN WÆRNES HØIE,<br><br>            Petitioner,<br><br>       vs.<br><br>MIO JEANNE LEE,<br><br>         Respondent. | CIVIL CASE NO. 25-00027<br><br><br>**DECISION AND ORDER<br>RE ATTORNEYS' FEES AND<br>NECESSARY EXPENSES** |

Before the court is Petitioner's Motion for Attorney's Fees and Necessary Expenses Pursuant to 22 U.S.C. § 9007(b)(3). *See* Mot., ECF No. 60. For the reasons stated herein, said motion is **GRANTED in part.** The total award for Petitioner's attorney's fees and necessary expenses is $99,609.01.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background have been thoroughly recounted in the court's order dated August 15, 2025. *See* Order, ECF No. 55. Accordingly, the court finds no reason to rehash this information herein.

1

## II.    DISCUSSION[1]

Petitioner is requesting a total amount of $166,882.72, under 22 U.S.C. § 9007(b)(3). *See* Bonderud Aff. at 2, ECF No. 61; and Berman Aff. at 4, ECF No. 59. This amount consists of attorney fees for Andrew M. Bonderud (lead counsel), Daron J. Berman (local counsel), and IPG Legal (Korean law firm); and costs for On the QT (private investigator), and transportation and lodging expenses for both the Petitioner and the lead counsel for their travels to Guam to attend court proceedings, as well as transportation costs for Petitioner and the minor child for their return to Norway.

Respondent objects to the motion and puts forth the following arguments: (1) Petitioner should have only hired one attorney and that attorney should have been someone from Guam to reduce expenses; (2) Petitioner's off-island counsel should not be compensated for his customary hourly rate of $500 but rather, he should be compensated for a Guam attorney's customary hourly rate of $350; (3) the only travel expenses that should be reimbursed are that of the return of the minor child to Norway; (4) the Korean law firm attorney's fees and the private investigator services do not fall under the allowable expenses under 22 U.S.C. § 9007(b)(3); and (5) the business-class airfares for Petitioner and the child should be rejected, particularly because they were paid under a corporate account. *See* Opp'n, ECF No. 62.

### A.  Entitlement to Attorney Fees

This civil action deals with the return of a minor child to her country of habitual residence, under the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the International Child Abduction Remedies Act ("ICARA"). Pet., ECF No. 1. This court determined that the Respondent had not met her burden in proving her asserted exceptions to removal under Articles 12, 13, or 13(b) of the Convention. As such, the court

---

[1] The court refers to CM/ECF pagination throughout this Decision and Order.

found for the Petitioner and ordered the Respondent to return the minor child to her country of habitual residence. Order, ECF No. 55.

The federal statute entitling Petitioner to receive attorney fees and necessary expenses can be found in 22 U.S.C. § 9007. Under that section, it states that "[a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3).

### B. Standard

The lodestar method is used in ICARA cases. *See Salazar v. Maimon*, 750 F.3d 514, 523 (5th Cir. 2014). The Supreme Court has found that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the "lodestar figure," which is a "presumptively reasonable fee." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). And as the Supreme Court has previously held, the presumption is a "strong" one. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The court may then adjust the lodestar figure upward or downward based on the factors set forth in *Kerr* that are not subsumed in the lodestar calculation.[2] *Gonzalez*, 729

---

[2] The *Kerr* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 950 (1976).

3

F.3d at 1202.

The party applying for fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. The party opposing the fees "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

### C. Reasonable Rates

An established standard for determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted). The general rule is that the relevant community is the forum in which the district court sits. *Id.* However, rates from outside the forum may be used if local counsel was "unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Petitioner seeks a rate of $250 for his local counsel on Guam, Daron J. Berman; and a rate of $500 for his lead counsel based in Florida, Andrew M. Bonderud. *See* Berman Aff. at 2, ECF No. 59; Bonderud Aff. at 2, ECF No. 61. Local counsel's rate is not at issue here. What is at issue is Florida-based lead counsel's rate.

Respondent argues that the relevant community is Guam so Guam rates should be applied for Petitioner's Florida-based attorney. Opp'n at 3, ECF No. 62. Respondent argues that experienced Guam attorney rates are between $300 and $350, and therefore, Bonderud's rate should be reduced to $350. *Id.*; Cook Decl. at 1, ECF No. 63.

Petitioner contacted 14 Guam attorneys, which he found through the online Guam Bar

directory. Høie Decl. at 1, ECF No. 68. Out of the 14 Guam attorneys he emailed,[3] only one attorney responded and that was his local counsel, Daron Berman. *Id.* at 1-2. Berman informed him, however, that he had never handled a Hague Convention abduction case. *Id.* at 2; Berman Decl, at 1, ECF No. 69. The court also notes that this is the first Hague Convention petition filed in the District Court of Guam (*see* Order at 1, ECF No. 55) and is unaware of any Guam bar members having previously handled a Hague Convention petition.

Based on the foregoing, the court finds that Petitioner made reasonable efforts to find local counsel but was faced with the unwillingness of Guam attorneys to represent him as 13 attorneys did not respond to him. When Petitioner was finally able to find local counsel willing to take the case, the local counsel lacked the degree of experience, expertise, or specialization required to handle the case properly. *See id.* The court agrees with Petitioner that retaining counsel that has legal experience on the subject matter was necessary as bringing his daughter home was of great importance to any parent in an international child abduction case. Accordingly, because of the unavailability of local counsel either because they were unwilling or unable to perform, this court will depart from the forum-rate rule. The question now is what hourly rate to apply for Petitioner's Florida-based attorney.

Bonderud is the managing partner of The Bonderud Law Firm, P.A., and has been practicing law in Florida since March 2013. Bonderud Aff. at 1, ECF No. 61. Bonderud filed an affidavit indicating that his customary rate is $500 per hour. *Id.* at 2. Berman filed a declaration indicating that his "legal research supports both $500 and $425 hourly rates for experienced attorneys litigating Hague Convention cases before District Courts across America." Berman Decl. at 1, ECF No. 68. In Petitioner's Reply, he directs the court to *Homer* and *Harvey*, both of which are ICARA cases. In *Homer v. Homer*, the court found that an hourly rate of $500 is

---

[3] Høie also contacted Respondent's counsel, Jeffrey Cook. Høie Decl. at 1, ECF No. 68.

"within the range of prevailing market rates in the Southern District of Texas." 2022 WL 4290465, at *3 (S.D. Tex. Sept. 16, 2022). In *Harvey*, the court found that an hourly rate of $525 "is consistent with rates for experienced appellate counsel in complex federal litigation in the Seattle market." *Harvey v. Means*, 2025 WL 2443151, at *2 (W.D. Wash. Aug. 25, 2025) (emphasis added). Both of these cases were based on the prevailing market rates in their respective communities, Southern District of Texas and Western District of Washington. Petitioner has not provided evidence of the prevailing market rate in Florida for similar services by lawyers of reasonably comparable skill, experience, and reputation. In fact, other than counsel's affidavit that he has been practicing law in Florida since March 2013 and that he is admitted to practice in several courts, the affidavit did not contain any other information on counsel's skills or experience or areas of practice.[4]

Petitioner argues that in the alternative, if the court is not inclined to grant an hourly rate of $500, then it should grant an hourly rate of $425, citing to several ICARA cases out of the Southern District of New York. *See* Reply at 4-5, ECF No. 67. The court declines to apply the prevailing market rates in the Southern District of New York. Bonderud is a practicing attorney in Jacksonville, Florida. *See* Pet. for PHV Admission, ECF No. 4. Accordingly, the court reviewed hourly rates in ICARA cases in the Middle District of Florida and finds that an hourly rate of $320 is reasonable. The court bases its decision on the hourly rate decided in *Neiuwenhoven v. Pisani*. 2023 WL 3794568 (M.D. Fla. May 18, 2023), *report and recommendation adopted*, 2023 WL 3791463 (M.D. Fla. June 2, 2023). In that ICARA case, the court awarded counsel who has 13 years of experience an hourly rate of $300. *Id.* at *9. Bonderud has approximately the same years of experience as counsel in *Neiuwenhoven*.

---

[4] The court notes that Petitioner, in his declaration, indicated that through his online research, he came across Bonderud's information that he has had experience in Hague Convention abduction cases. Høie Decl. at 2, ECF No. 68.

6

However, taking into account inflation, $300 in 2023 is worth approximately $320 in August 2025.[5] *See https://www.bls.gov/data/inflation_calculator.htm* (last viewed June 19, 2026). Accordingly, the court will reduce Bonderud's $500 per hour rate to $320.

### D. Reasonable Hours

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Webb v. Bd. Of Educ. of Dyer County*, 471 U.S. 234, 242 (1985). Counsel has the burden to demonstrate that the number of hours spent was reasonably necessary to the litigation. *Hensley*, 461 U.S. at 437. Further, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. *Id.* The court may reduce hours where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary. *Id.* at 433-34. The court may also reduce hours unreasonably spent, or where excessive time is spent on a particular task, or where there is redundant and/or ambiguity in the billing. *Id.*

Respondent argues that it was "inappropriate" to have two attorneys handle this case "for what one attorney could have very well handled." Opp'n at 3, ECF No. 62. Respondent argues that the work is duplicative (*id.* at 6, Attach. to Lee Decl. at 1, ECF No. 64-1) but fails to cite specifically which itemized work is duplicative between Berman and Bonderud.[6] Respondent moves the court to strike the hours performed by Berman in its entirety. Opp'n at 6, ECF No. 62.

The court declines to strike the billable hours requested by Berman. As discussed *supra*, out of the 14 Guam bar members that Petitioner contacted, only one responded to him. And that one attorney lacked the degree of experience, expertise, or specialization in handling a Hague

---

[5] Trial for this case occurred in August 2025.

[6] In the attachment to Respondent's declaration, Respondent provided two examples: "reviewing Oslo Court Order" and "certificates of service" but fails to provide which specific entries were duplicative. *See* Attach. to Lee Decl. at 6, ECF No. 64-1.

Convention petition. Bonderud, on the other hand, has had experience in Hague Convention abduction cases. *See* Høie Decl. at 2, ECF No. 68. However, Bonderud is not admitted to practice in Guam. Under this court's general rules, Bonderud may be temporarily admitted to practice *provided* he has designated local counsel. GNLR 17.1(d)-(e). Further, the local counsel "shall at all times meaningfully participate in the preparation and trial of the case with the authority and responsibility to act as attorney of record for all purposes." GNLR 17.1(e). The existence of both attorneys in this case was necessary.

The court will review the hours for reasonableness.

### 1. Andrew Michael Bonderud's billable hours

Andrew Michael Bonderud is claiming a total of 114.75 hours at $500 per hour for work performed in the case, plus 96 hours of travel time at one half of counsel's customary hourly rate. Bonderud Aff. at 2, ECF No. 61. The total attorney fees requested is $81,375. *Id.*

### a. Work Performed in the Case

The court will reduce the following entries based on the court's review of the docket entries and the court's finding that these could have been reasonably reviewed in less time.

| Date | Description | Hours Claimed | Hours Approved |
|---|---|---|---|
| 06/20/2025 | Review ECF notices 16 and 17, receipt of passports | 0.25 | 0.10 |
| 07/01/2025 | Review ECF 22, certificate of service of various documents | 0.25 | 0.10 |
| 07/02/2025 | Review ECF 23 and 24, following court hearing | 0.50 | 0.25 |

The court will reduce the following entry to zero based on the court's finding that the task is clerical in nature and could have easily been performed by the law firm's administrative staff.

| Date | Description | Hours Claimed | Hours Approved |
|---|---|---|---|
| 07/01/2025 | Draft and file certificate of service, ECF 22 | 0.50 | 0.00 |

8

The court does not find redundant or vague entries nor inflated trial hour entries as argued by Respondent (*see* Attach. to Lee Decl. at 6, ECF No. 64-1).

Based on the reductions, the court approves a total of 113.70 hours. Based on the approved rate of $320, the approved amount for the work performed by Bonderud in this case is $36,384.00.

### b. Travel Time

Respondent objects to Bonderud's billed travel time. Opp'n at 3, ECF No. 62.

The touchstone in determining whether hours have been properly claimed is reasonableness. The assessment of reasonableness is made by reference to standards established in dealings between paying clients and the private bar. *See Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982). "When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time[.]" *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984).

In an ICARA case, the court found that "[a] prevailing party ordinarily may not recover a fee for an attorney's travel time *unless* no local counsel can capably represent the party." *Rath v. Marcoski*, 2018 WL 446651, at *2 (M.D. Fla. Jan. 17, 2018), *aff'd,* 898 F.3d 1306 (11th Cir. 2018) (emphasis added). That is the case here. As discussed *supra*, local counsel has never handled a Hague Convention petition. Additionally, in another ICARA case, the court found that counsel's travel time was compensable but reduced the travel time by fifty percent, since the "time spent did not require any legal skill or experience, and there is no assertion that productive work was done during the travel time that was not otherwise billed." *Neiuwenhoven*, 2023 WL 3794568, at *8.

Here, counsel is requesting for a total of 96 hours of travel time at one half of counsel's

customary hourly rate, which is the same as requesting for fifty percent of travel time at counsel's full hourly rate. Ex. A to Bonderud Aff. at 1, ECF No. 61-1. The court will approve fifty percent of counsel's travel time, which is 48 hours, at the court's approved hourly rate of $320.

| Date | Description | Amount Claimed | Amount Approved |
|---|---|---|---|
| 06/28/2025 | Travel from Florida to Guam for in-person hearing | 24 hours x $250 = $6,000 | 12 hours x $320 = $3840 |
| 07/03/2025 | Travel time from Guam to Florida, following in-person Court hearing | 24 hours x $250 = $6,000 | 12 hours x $320 = $3840 |
| 08/01/2025 | Travel from JAX to Guam for trial | 24 hours x $250 = $6,000 | 12 hours x $320 = $3840 |
| 08/09/2025 | Return travel from Guam to JAX | 24 hours x $250 = $6,000 | 12 hours x $320 = $3840 |

Based on the reductions, the court approves a total of 48 hours of travel time. Based on the approved rate of $320, the approved amount for counsel's travel time is $15,360.

### c. Total Attorney Fees for Bonderud

| Description | Approved Rates | Approved Hours |
|---|---|---|
| legal work | $320 | 113.70 |
| travel time | $320 | 48 |
| TOTAL | | 161.70 |

The total attorney fees awarded to Bonderud is $51,744.

### 2. Daron J. Berman

Daron J. Berman is claiming a total of 48.40 hours at $250 hourly rate, for a total of $12,100 in attorney fees. Berman Aff. at 2, ECF No. 59.

### a. Administrative/Clerical Work

Counsel block billed tasks that were both clerical and non-clerical work. Some of the tasks listed were legal work that are compensable, such as reviewing the TRO or communicating with cocounsel. However, counsel lumped these tasks with clerical work such as communicating

10

with the court clerk's office regarding required wet signature, coordinating service of summons and other documents, resubmitting documents due to a missing page—all of which are best handled by administrative staff. Non-legal work is not compensable at attorney rates. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Because these clerical tasks are block-billed with compensable legal work, the court will reduce the following entries by 50 percent.

| Date | Description | Hours Claimed |
|---|---|---|
| 06/12/2025 | Teleconference with District Court clerk re submitting the Verified Petition with a wet signature for counsel; reprint and sign the petition and then submit to District court; also submit draft of Order to file Oslo Court Order under seal | 0.25 |
| 06/13/2025 | Review the TRO issued by the District Court; arrange to have TRO delivered to Guam Airport and to Customs; coordinate service of summons and other court documents after TRO delivered to airport and customs | 0.25 |
| 06/16/2025 | Review TRO and prepare to resubmit the Oslo custody order due to a page missing from original submission; exchange emails with lead counsel and client re status of case and ongoing updates | 0.25 |
| 06/19/2025 | Review and exchange emails with client and lead attorney; coordinate delivery of certificate of service to the Respondent | 0.25 |
| **TOTAL HOURS** | | 1.00 |
| **APPROVED HOURS** | | 0.50 |

*See* Ex. 1 to Berman Aff., ECF No. 59-1.

### b. Outside the Scope of 22 U.S.C. § 9007(b)(3)

The court will reduce the following entry to zero based on the court's finding that the task

11

is not related to the return of the minor child to Norway. *See* 22 U.S.C. § 9007(b)(3).[7]

| Date | Description | Hours Claimed | Hours Approved |
|---|---|---|---|
| 08/18/2025 | Review file in preparation of Motion for Attorney's Fees and Necessary Expenses; send draft motion to lead attorney and client for their review and comment | 1.50 | 0.00 |

### c. Total Attorney Fees for Berman

The total reduction for Berman's billable hours is 2.50. Therefore, the total attorney fees awarded to Berman is $11,600. This is the sum of 46.40 approved hours multiplied by an hourly rate of $250.

### 3. IPG Legal: Petitioner's Attorneys in Korea

Petitioner seeks a total amount of $20,812.90 for IPG Legal. Berman Aff. at 2-3, ECF No. 59. These are attorney fees incurred in Korea in a separate court proceeding in Korea. Reply at 6, ECF No. 67. Respondent opposes these attorney fees because they were not incurred as part of the proceedings in Guam. Opp'n at 4, ECF No. 62. The court agrees. The ICARA is clear: only an action brought under 22 U.S.C. § 9003 is compensable under 22 U.S.C. § 9007(b)(3). The attorney fees incurred in Korea were not brought under 22 U.S.C. § 9003. Therefore, said fees are not compensable under 22 U.S.C. § 9007(b)(3). *See Adkins v. Adkins*, 2020 WL 6508616, at * 2 (N.D. Cal. Nov. 5, 2020) (ICARA provides for attorney fees brought under Section 9003 of the Hague Convention and "[t]he statute does not authorize the Court to award fees and costs in ancillary matters litigated in other fora[.]")

The request for an award of $20,812.90 for IPG Legal is denied.

---

[7] In *Neiuwenhover*, instead of striking the time spent preparing for fee petition, the court reduced the hourly rate across the board. *See* 2023 WL 3794568, at *8; *see also Aldinger v. Segler*, 338 F. Supp. 2d 296, 298 (D.P.R. 2004), *aff'd*, 157 F. App'x 317 (1st Cir. 2005) (reducing attorney fees by 50% across the board for various reasons, including the court's decision not to consider billable hours for matters occurring after the children were returned to their country of habitual residence). The court declines to impose an across-the-board fee reduction.

#### 4. Lodestar Adjustment

After the determination of the lodestar figure, the court may then adjust the figure upward or downward based on the factors set forth in *Kerr* that are not subsumed in the lodestar calculation. *Gonzalez*, 729 F.3d at 1202.

The court has already considered several of the *Kerr* factors in calculating the lodestar figure, such as the time and labor required; the undesirability of the case for local attorneys as it is novel for them; the experience of the off-island attorney; the difficulty of the case; the results obtained; and the attorney fee awards in similar cases. As such, the court finds no reason to depart or adjust the lodestar figure.

### E. Necessary Expenses

Petitioner requests for the following expenses: Bonderud's travel and lodging expenses, court fees and other litigation costs, private investigator fees, Petitioner's travel and lodging expenses, and the minor child's return travel expenses. *See* Ex. 4 to Ex. 12 to Berman Aff., ECF Nos. 59-4 to 59-12; Ex. B to Bonderud Aff., ECF No. 61-2.

#### 1. Bonderud's Travel Expenses

Respondent objects to counsel's travel and lodging expenses. Opp'n at 6, ECF No. 62. Bonderud is requesting travel costs in the amount of $16,923.24. Bonderud Aff. at 2, ECF No. 61. This amount consists of the following expenses (*see* Ex. B to Bonderud Aff., ECF No. 61-2):

| Dates of Travel | Roundtrip business class airfare | Lodging |
|---|---|---|
| June 28-July 3, 2025<br><br>(hearing on the motion for preliminary injunction) | $6,805.80<br>(Ex. B at 4) | $1,221.00 – 4 nights<br>(Ex. B at 10) |
| August 1-9, 2025 | $4,891.00[8] | $3,356.64 – 6 nights[10] |

---

[8] This was paid using partial miles and partial cash ($2,491.00 in cash).
[10] This was paid with 335,664 points.

| | | |
|---|---|---|
| (multi-day trial) | (Ex. B at 16-17)<br><br>$27.20[9]<br>(Ex. B at 24) | (Ex. B at 31)<br><br>$621.60 – 1 night<br>(Ex. B at 38) |
| **TOTAL** | $11,724 | $5,199.24 |

The Ninth Circuit allows for reasonable transportation and lodging expenses for counsel in a Hague Convention case. *Cuellar v. Joyce*, 603 F.3d 1142, 1143-44 (9th Cir. 2010). Here, the court finds that business class airfares are not reasonable and necessary expense. Accordingly, the court will reduce the cost of the airfare by fifty percent, from $11,724 to $5,862. From the court's firsthand experience, it notes that the average cost of a roundtrip economy ticket from Jacksonville, Florida to Guam ranges between $2,500 and $3,300.

The court also finds that lodging in a luxury hotel was not a reasonable and necessary expense. Accordingly, the court will apply the federal lodging per diem rate for Guam that was in effect in June-August 2025, which was $179. *See https://www.defensetravel.dod.mil/neorates/report/index.php* (last viewed June 21, 2026). Lodging was for 11 nights.[11] Thus, the approved total lodging cost is $1,969, plus 11% hotel room and occupancy taxes and fees[12] for 11 nights, which brings the total amount to $2,185.59.

The court grants counsel's travel and lodging expenses in the amount of $8,047.59. This is the sum of $5,862 (airfare) and $2,185.59 (11 nights of lodging, plus 11% taxes and fees).

### 2. Court Fees and Other Litigation Costs

Petitioner seeks an award of necessary costs in the amount of $1,945.37, incurred by the

---

[9] Amount paid for a different departure date due to extended trial.

[11] *See infra* re discussion on additional days of lodging prior to the hearing and trial dates. The same analysis applies here, and the court finds them reasonable. For the preliminary injunction hearing held on July 2, 2025, counsel arrived on Guam on June 29, 2025, at 9:45 p.m. (*see* Ex. B at 2, ECF No. 61-2). Additionally, counsel arrived on Guam for the trial set for August 4, 2025, on August 2, 2025, at 6:05 pm (*see* Ex. B at 18, ECF No. 61-2).

[12] The 11% hotel room and occupancy taxes and fees were based on the court's calculation from Exhibit B of Bonderud's Affidavit. *See* Ex. B at 10 and 31, ECF No. 61-2.

14

Berman law firm. Ex. 1 to Berman Aff. at 6, ECF No. 59-1. This amount consists of court fees, process server fee, and photocopying costs. Respondent does not object to this amount, and the court finds that these are necessary litigation costs under 22 U.S.C. § 9007(b)(3). Accordingly, the court approves the amount of $1,945.37.

### 3. Private Investigator, On the QT

Petitioner is requesting the amount of $23,952.96 for investigator services rendered by On the QT. Berman Aff. at 3, ECF No. 59; Ex. 4 to Berman Aff. at 1-7, ECF No. 59-4. Respondent objects to this request and relies on *Hulsh v. Hulsh*. Opp'n at 5, ECF No. 62. In that case, the district court denied the requested investigator fees and noted that the respondent has provided caselaw that "indicates [the investigator fee] is not recoverable under the statute" and cited to cases where private investigator fees were not recoverable under 28 U.S.C. § 1920. *Hulsh v. Hulsh*, 2021 WL 963770, at *9 (N.D. Ill. Mar. 15, 2021). Section 1920 of Title 28, United States Code, is different and separate from the applicable statute here, which is 22 U.S.C. § 9007(b)(3). Additionally, in *Hulsh*, it appears that the investigator was not successful in that the court noted "attempts to locate" the abducted children. 2021 WL 963770, at *9. Here, the investigator successfully located the child. Petitioner argued that "[t]estimony at trial proved that Petitioner's investigators played a vital role in locating the Respondent and A.L.H. in Guam, a remote island to the parties, that neither one nor their child had ever visited prior to Respondent's decision to relocate [in Guam]." Reply at 6, ECF No. 67. Petitioner emphasized that "[b]ut for the investigators and their efforts, Petitioner may have never located the Respondent." *Id.*

Section 9007(b)(3) of Title 22, United States Code, does not specifically list investigator fees as compensable. However, the list provided in that statute is not exclusive. Rather, it is illustrative. *See* 22 U.S.C. § 9007(b)(3) (use of the term "including"). The test is whether such expenses were necessary and related to the return of the child. *Id.* In *Neves v. Neves*, the court

allowed investigative services fee because the court found such expense "to be reasonable and necessary to the Petitioner's efforts" to have the abducted children returned to their country of habitual residence. 637 F. Supp. 2d 322, 344 (W.D.N.C. 2009). *Compare Siras v. Bah*, 2026 WL 1558376, at *5 (M.D. Pa. June 2, 2026) (denying investigator fee services because the unsuccessful surveillance efforts did not help the return of the child in any way). *See also Ariza v. Ash*, 2023 WL 6131088, at *4 (W.D. La. Sept. 19, 2023) (finding that the costs, including costs for investigative services, were reasonable and necessary for the child's return to Honduras under the Hague Convention).

Based on the trial records, the court agrees with Petitioner that the investigator's services played a vital role as the investigator successfully located the child in Guam. Accordingly, the court finds the investigator services as necessary in the return of the child to Norway. The court reviewed the invoice of On the QT and finds them reasonable. *See* Ex. 4 to Berman Aff. at 1-7, ECF No. 59-4. The court grants the amount of $23,952.96.

### 4. Petitioner's Travel and Lodging Expenses

Petitioner requests the following amounts for his travel and lodging expenses. *See* Ex. 5 to Ex. 12, ECF Nos. 59-5 to 59-12. The total amount requested is $9,773.25. *See* Ex. 2 to Berman Aff. at 2, ECF No. 59-2; Berman Aff. at ¶¶ 10-11, ECF No. 59. The court notes that Petitioner did not request for lodging for two nights during the extended trial, with the trial having ended on the evening of August 8, 2025. Petitioner also did not request for travel costs from Japan to Guam during his July 30, 2025, trip to Guam. As noted below, he only requested for travel costs from Oslo to Japan for his July 30, 2025, trip to Guam.

| Transportation | Foreign Currency[13] | U.S. Dollar |
|---|---|---|
| June 29, 2025 Oslo to Narita | 6,806 NOK (Ex. 5, ECF No. 59-5) | $666.99 |
| June 30, 2025 | | |

---

[13] Respondent did not object to the currency conversion amounts provided by Petitioner.

16

| Narita to Guam<br>July 2, 2025<br>Guam to Narita | 2,988 NOK<br>(Ex. 7, ECF No. 59-7) | $292.82 |
|---|---|---|
| July 3, 2025<br>Haneda to Oslo | 468 NOK<br>(Ex. 8, ECF No. 59-8) | $45.86 |
| July 30, 2025<br>Oslo to Haneda | 694 NOK<br>(Ex. 9, ECF No. 59-9) | $63.60 |
| August 9, 2025<br>Guam to Seoul | | $384.97<br>(Ex. 11, ECF No. 59-11) |
| August 9, 2025<br>Seoul to Oslo | 10,353,300 KRW<br>(Ex. 12, ECF No. 59-12) | $7,454.16 |
| **Lodging** | **Foreign Currency[14]** | **U.S. Dollar** |
| June 30-July 2, 2025<br>Guam Plaza Resort Hotel, 2 nights | 2,191,76 KR<br>(Ex. 6, ECF No. 59-6) | $214.82 |
| August 2-7, 2025<br>Guam Plaza Resort Hotel, 5 nights | 6,632,95 NOK<br>(Ex. 10, ECF No. 59-10) | $650.03 |

Respondent objects to "[a]ll claimed travel expenses, except those strictly necessary to returning [the minor child] to Norway[.]" Opp'n at 6, ECF No. 62. Respondent's objection has no merit. Airfare and hotel expenses are allowed. *See Siras*, 2026 WL 1558376, at *3; *Ariza*, 2023 WL 6131088, at *4. The hearings and the trial occurred in this court's jurisdiction, in Guam, and Petitioner is a resident of Norway and is located in Norway. Accordingly, the reimbursements for Petitioner's economy airfares and hotels to allow him to attend critical court proceedings are appropriate here. The court notes that Petitioner did not attend in-person the final pretrial conference and hearing on all motions that were held on July 29, 2025. Rather, he opted to attend that court proceeding via Zoom. *See* Minute Entry, ECF No. 42. Petitioner only attended in-person the preliminary injunction hearing held on July 2, 2025, and the trial that commenced on August 4, 2025, and concluded on August 8, 2025. *See* Minute Entries, ECF Nos. 23, 43-46, & 50.

Additionally, the court recognizes that the extra day or two of lodging prior to the hearing and trial is reasonable. The court recognizes the unique situation of traveling to Guam from

---

[14] Respondent did not object to the currency conversion amounts provided by Petitioner.

anywhere in the world other than Asia, with travel time of approximately 20 hours or more, and with limited flight schedule availability unlike other places in the United States. The court also takes into account potential flight delays, the crossing of the international dateline, and the 8-hour time difference.

Respondent also objects to the business-class airfares from Seoul, Korea to Oslo, Norway. Opp'n at 5, ECF No. 62. Respondent puts forth two arguments. First, the business-class airfares should be reduced to economy-class tickets. *Id.* Second, the business-class airfares were purchased through a corporate account using "UATP," presumably by Petitioner's employer since Petitioner represented to the court at the end of the trial that his employer was going to purchase business-class airfares for their return home. *Id.* Respondent argues that because "these expenses were already absorbed by the company, Petitioner has not suffered any out-of-pocket loss" and therefore should not be reimbursed. *Id.* at 5-6. The court agrees with Respondent on the business-class airfares.

One of the two main purposes of 22 U.S.C. § 9007(b)(3) is "to restore the applicant to the financial position he or she would have been in had there been no removal or retention[.]"[15] *Neiuwenhoven*, 2023 WL 3794568, *at 2 (citing the Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,511 (Mar. 26, 1986). The court reviewed Exhibit 12 to Berman's Affidavit, and it shows that the payment for the business-class airfares was made using a UATP account.[16] *See* Ex. 12 at 5, ECF No. 59-12. This evidence, along with Petitioner's statement in court that his employer will cover for the business-class airfares, shows that Petitioner did not incur the cost. Moreover, Petitioner did not rebut Respondent's argument on the business-class airfares in his Reply to show otherwise that he did

---

[15] The other is to deter such removal or retention of the child. *Neiuwenhoven*, 2023 WL 3794568, *at 2.
[16] UATP is a payment platform for businesses and merchants. *See https://uatp.com* (last visited June 22, 2026).

in fact incur the costs. Accordingly, the court will not grant the reimbursement request of $7,454.16, for the business-class airfares for Petitioner and the minor child on their return home to Norway.

The court approves a total of $2,319.09,[17] for Petitioner's travel and lodging expenses.

### F. Whether Ordering Respondent to Pay for the Necessary Expenses are Cleary Inappropriate

Under ICARA, the court is required to award the Petitioner's necessary expenses unless such award "would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). By providing for an award of necessary expenses for the prevailing party, ICARA "contemplates the use of such awards as a deterrent to violations of the Convention." *Friedrich v. Thompson*, 1999 WL 33951234, at *2 (M.D.N.C. Nov. 26, 1999). Respondent bears the burden of showing that it would be clearly inappropriate to award the requested fees and costs. *Id.*

Without citing any caselaw, Respondent argues that ordering her to pay for the necessary expenses incurred by or on behalf of the Petitioner is clearly inappropriate because (1) she has no financial means to pay, and (2) she acted in good faith belief that she was protecting her child. *See* Opp'n at 2-4, 6-7, ECF No. 62; Lee Decl., ECF No. 64.

Two main considerations have emerged in the courts' review of the "clearly inappropriate" caveat under 22 U.S.C. § 9007(b)(3). First, "whether a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child". *Hulsh*, 2021 WL 963770, at *5. Second, "whether a respondent had a good faith belief that her actions in removing or retaining a child were legal or justified." *Id. See also Ariza*, 2023 WL 6131088, at *4; *Homer v. Homer*, 2022 WL 4290465, at *8 (S.D. Tex. Sept. 16, 2022) (relevant considerations include "whether a full fee award would leave a respondent-parent with

---

[17] $9,773.25 (amount requested) minus $7,454.16 (business-class airfares) equals $2,319.09.

19

a 'straitened' financial condition from caring for her child" and "the respondent's good-faith belief that his actions were legal.").

### 1. Financial Situation

Respondent states that she is "currently unemployed, without assets," and unable to meet even her own living expenses. Lee Decl. at 2, ECF No. 64. Other than a statement in her declaration, Respondent provided no other evidence such as depleted bank account statements or loss of her investments. It is, after all, Respondent's burden.

In response, Petitioner argues and reminds the court of Respondent's testimony at trial that "she received an inheritance from her grandmother, that her brother manages funds for her and her siblings, and that she receives money from her brother upon request." Reply at 2, ECF No. 67. Further, Petitioner reminds the court of Respondent's testimony at trial that she took the job at the Nikko hotel primarily for the health insurance benefits and that her employer testified that Respondent's hours were reduced to no more than 32 hours per week with a salary of $13 per hour. *Id.* Petitioner argues that if Respondent's hotel job was truly her only source of income, there was no way she would have been able to afford her monthly rental at Summer Towers with rent ranging between $2,800 and $3,150, per month at that place. *Id.*

Petitioner also states that since he met the Respondent, "she has never held a job for more than a few months" but nonetheless "always had the ability to pay for any expenses whenever an expense arose." Høie Decl. at 2, ECF No. 68. Petitioner further states that Respondent would "take months long trips" and was able to afford one of the most prestigious firms in Norway to represent her in their child custody battle, in addition to her already existing government-paid attorneys by the Norwegian government. *Id.* at 2-3.

The court reviewed Respondent's testimony at trial, and she testified that she has access to additional funds besides her hotel employment income. On August 7, 2025, Respondent

20

testified that her family is "very comfortable" and although her family's money is not her own money, she stated that they are "very giving". But more importantly and the main basis for this court's decision, Respondent testified that she inherited money from her grandmother who passed away in 1997. Although the inheritance "wasn't like too much money", Respondent testified that it has grown through investments. Respondent indicated that her brother is the one who does her investments, because he is in finance and holds an MBA and that he is "really good at managing money". When asked further by counsel, Respondent testified that "he's pretty good at it" so "whenever I need money, like he sends it and we kind of discuss like what to do, but I don't know how to do funding, mutual fund, stock market, so he manages it."

In light of Respondent's own testimony at trial regarding her financial resources, and the fact that her inheritance has been successfully managed by her brother for close to three decades, the court does not find that Respondent has no financial resources simply because she is unemployed. The court also notes that had Respondent's only source of income was her $13/hour hotel job, she would not have been able to afford private schooling for the child, along with the child's extracurricular activities that were revealed at trial.

Moreover, the factor of "whether a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child," is inapplicable here, as the child is in Norway with Petitioner and he has custody of the child.

For the reasons stated, the court finds that Respondent has not met her burden that the necessary expenses are "clearly inappropriate."

**2. Good-Faith Argument**

Respondent states that she genuinely believed the child was subjected to psychological abuse and potentially physical abuse in the long run. Lee Decl. at 1-2, ECF No. 64. This was Respondent's basis for the removal, as argued at trial and again, as argued here for the court to

21

make a finding that the necessary expenses are clearly inappropriate.

The problem with Respondent's argument is that the good-faith consideration under the "clearly inappropriate" caveat pertains to having removed the child believing the removal was legal. That is not the case here. Respondent stipulated to the fact that she "failed to return [the minor child] to Petitioner after a scheduled visitation and removed [the minor child] from Norway without Petitioner's consent." Joint Stipulation at ¶ 9, ECF No. 33. Respondent was clearly aware that the removal was not legal. Accordingly, the good-faith argument fails.

### III.    CONCLUSION

For the reasons stated herein, Petitioner's Motion for Attorney's Fees and Necessary Expenses Pursuant to 22 U.S.C. § 9007(b)(3) is **GRANTED in part.** Respondent is ordered to pay the amount of $99,609.01.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
     **Chief Judge**
**Dated:  Jul 01, 2026**

22