**THE DISTRICT COURT OF GUAM**

In re: the Application of Øystein Wærnes Høie for the Return of the Minor Child, A.L.H., to Norway:

ØYSTEIN WÆRNES HØIE,

                Petitioner,

      vs.

MIO JEANNE LEE,

                Respondent.

CIVIL CASE NO. 25-00027

**ORDER DENYING
PETITIONER'S IFP APPLICATION**

On July 29, 2026, Respondent filed a Notice of Appeal on this court's Decision and Order dated July 1, 2026, on the issue of attorney fees and necessary expenses, ECF No. 70. *See* ECF No. 74. Along with the Notice of Appeal, Respondent filed an Application to Proceed *In Forma Pauperis* ("IFP") and an accompanying declaration. *See* ECF Nos. 75, 76, 78. Rule 24 provides that an appellant must file the IFP Application before the district court and if the district court denies the motion, it must state its reasons in writing. FRAP 24(a)(1) & (2). For the reasons stated herein, the IFP Application is **DENIED**.

The district court may permit indigent litigants to proceed without prepayment of fees

1

and costs, or security therefor, by a person who has been shown to be "unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). However, the court has broad discretion in denying an IFP Application. *Weller v. Dickson*, 314 F.2d 598 (9th Cir. 1963), *cert. denied*, 375 U.S. 845 (1963). The court may look beyond an IFP Application to determine an applicant's true financial condition. *O'Neal v. Denise*, 2018 WL 1100903, at *1 (D. Nev. Jan. 11, 2018).

In this case, Respondent lists the following monthly income: $416.00 in gifts and $50.00 in public assistance from the Norwegian Government. ECF No. 75 at 2.[1] Respondent's bank account shows that she has $1,999.01 in Chase checking account and $525.00 in DNB checking account. *Id.* As to Respondent's monthly expenses, she lists a total of $3,506. *Id.* at 5. Respondent explains that her monthly expenses will increase beginning end of August, because she expects to begin court-ordered overnight parenting time with her minor child. *Id.* at 6. She also has unpaid attorney's fees in the amount of $17,304.50 as of July 26, 2026. *Id.* She is currently unemployed and the last job she has held was in September 2025, at the Nikko Hotel Guam. *Id.* at 2. Additionally, Respondent claims that the inheritance from her grandmother had ran out and the money from the brother is a "family gift" and not her own money. Lee Decl. at 2, ECF No. 78.

The court finds that Respondent's representations lack credibility and the court is unpersuaded by Respondent's assertion that she has no other sources of income. For example, Respondent provided her Chase checking account transactions from June 1, 2026 through June 30, 2026.[2] *See id.* at 14-16. On June 11, 2026, there was an unexplained large deposit of $20,000 into her checking account. *Id.* at 15. The next day, June 12, 2026, Respondent made a payment

---

[1] The court refers to CM/ECF pagination throughout this Order.

[2] Respondent provided what she marked as Exhibit C-2, DNB Bank Statement. *See* ECF No. 78 at 17-20. The court is unable to review this bank record thoroughly, because it is in foreign language and there is no English translation provided.

of $10,550.00 to her credit card ending in 2265. *Id.* Then again, on June 15, 2026, she made another payment of $751 to that same credit card. *Id.* Again, on June 22 and 29, 2026, she made additional payments to said credit card in the amounts of $599 and $275, respectively. *Id.* at 14. Prior to the $10,550 payment, Respondent also made payment to the same credit card on June 1, 2026, in the amount of $449. *Id.* at 16. In total, Respondent made five payments to her credit card ending in 2265, in June 2026, for a total amount of $12,624. A person who is truly strapped for cash and has no other source of income would typically not make multiple payments to their credit card in one month alone, especially in the substantial amount of over $12,600. Respondent's actions do not reflect that of a person who is financially struggling, with no other source of income. A review of the same bank statement also shows that she made payments in thousands of dollars to other credit cards just for the month of June 2026 (Barclay on 6/16/2026 for $3,501; American Express on 6/15/2026 for $1,209.42). *Id.* at 14-15. Again, this is not the action of a person exclusively relying on Government welfare. In the month preceding Appellant's IFP Application and the court's July 1, 2026 decision, Respondent's Chase bank statement shows available funds of over $23,500 on June 11, 2026 (which was quickly depleted by June 29, 2026, after several thousands of dollars in credit card payments).

The court believes Respondent is not fully disclosing her entire financial resources. For example, Respondent was employed for only five months in the last two years, with a monthly gross income of $920. ECF No. 75 at 2. Yet, her monthly rent was $2,400. ECF No. 78 at 36. If Respondent's only source of income was her short-term employment of $920 per month, she would not have been able to afford her rent, which is on the higher end in Guam's real estate market. Respondent was also able to pay her attorney fees in Guam in the amount of over $23,000 since September 2025. *See* Cook Decl. at ¶ 6, ECF No. 63 (Cook legal services totaling $40,784.50), and Ex. E-5 to Lee Decl. at 32, ECF No. 78 (outstanding balance of $17,304.50).

3

In Respondent's declaration, she stated that the "limited inheritance" from her grandmother has been depleted from daily living expenses. *See* ECF No. 78 at 2. She further stated that "[t]he investments managed and controlled by my brother are not accounts that I legally own or control. . . . His income, accounts, and investments are not my assets[.]" *Id.* This is contrary to Respondent's testimony, which this court heard first-hand, on August 7, 2025. Respondent's testimony was very clear that her brother manages her money through investments. In fact, she was boasting that her brother manages her investments because he is in finance and holds an MBA and that he is "really good at managing money." As noted by this court in its July 1, 2026 decision, when asked further by counsel, Respondent testified that "[my brother is] pretty good at it" so "whenever I need money, like he sends it and we kind of discuss like what to do, but I don't know how to do funding, mutual fund, stock market, so he manages it." There was no indication throughout Respondent's testimony that the money that was being invested and in which Respondent was drawing from whenever she needed money, was the brother's money.

Even assuming that it is the brother's money, which this court does not believe, in reviewing IFP applications, courts may consider possible aid from friends or relatives. *See Abadi v. Target Corp.*, 2023 WL 6796558, at *7 (E.D. Penn. Oct. 13, 2023) (citations omitted). "[T]he Court may consider 'the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend.'" *Id.* at *7 (citations omitted).

Accordingly, based on the foregoing, Respondent's IFP Application is **DENIED**.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Aug 11, 2026**

4